### THE PEOPLE *v.* MALDONADO.

### APPEAL from the District Court of Ponce.

#### No. 256.—Decided January 12, 1911.

EVIDENCE—RAPE—TESTIMONY OF THE AGGRIEVED WOMAN—HEARSAY EVIDENCE.—
In a prosecution for rape the testimony of the aggrieved woman given before the ward *alcalde (comisario)* or police authorities constitutes hearsay evidence and is not admissible as evidence at the trial.

ID.—CHARGE TO THE JURY.—In cases where improper evidence has been admitted, not only such evidence should be eliminated from the record but the jury must be instructed not to take it into consideration, although in the majority of cases such instructions should be expressly requested by the defendant.

ID.—In the case at bar the lower court ordered the elimination of certain statements made to two witnesses by the aggrieved woman, but decided that it be stated in the record that said witnesses had testified only to the effect that the aggrieved woman had complained before them that she had been ravished. The court held that this statement of the court had not been sworn to by the witnesses nor had the defendant been afforded an opportunity to cross-question them upon this point, wherefore the court's decision constituted a fundamental error.

ID.—CORROBORATION OF THE TESTIMONY OF THE AGGRIEVED WOMAN.—In prosecutions for rape the defendant cannot be convicted on the sole testimony of the offended woman, which must be corroborated by some other evidence. The corroborating evidence by itself need not reveal all the elements of the crime, but it should tend to connect the defendant with the crime charged.

The facts are stated in the opinion.

*Mr. Felipe Casalduc* for appellant.

*Mr. Jesús M. Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

In the District Court of Ponce Damián Maldonado was

charged with having committed rape on the person of Cata-
lina Espinosa, a woman not his wife, she being prevented
from offering any resistance by reason of the threats of
severe bodily injury he made against her with a revolver he
was holding. The case was tried before a jury.

The prosecuting witness testified that she was a resident
of Juana Díaz, in the ward of Capitànejo, 15 years old;
that the defendant was her step-father; that he was married
to her mother; that before August 23, 1909, her step-father
did not bother her or do anything against her, she living
peacefully in his house, respecting him as a father, and that
she was going to school; that on the morning of August 23,
Damián Maldonado came up to her bed and placed a revol-
ver on her breast, it being dark, and when she awoke she
felt the revolver on her breast, and right away he seized
hold of her throat, saying that it was he; that she should
keep quiet and placed the revolver on her breast; that she
knew that it was a revolver because she felt it; that he
lifted up her chemise and stretched her legs apart and lay
down on top, and she felt a pain without knowing what he was
doing to her, for she had never thought of such an act, hav-
ing lived innocently without knowing that a man did such
a thing to a woman; that this happened on a Monday, and
during the 23d and 24th he kept on making love to her and
threatened to kill her with the revolver, and pinched her
when he passed her side on the 23d and 24th; and he bit her
and continued to persecute her, and she went to the house of
the commissioner to make a declaration, and her mother
arrived after her and there learned the story. The com-
missioner notified the police and she was· examined by Doctor
Torres; and from that time up to now her mother has been
bothering her and advising her to testify in favor of Damián
Maldonado; that up to August 25 she had not done anything
with any other person, knowing now what a man can do to a.
woman, and that the defendant had carnal relations with her,
and that she felt a pain when the defendant put something

between her legs which penetrated into her body; that when these facts occurred the defendant, Damián Maldonado, was living with her mother, María Rosario Tirado by name, the house having two rooms, one a living room and the other a bedroom, and there were sleeping in the bedroom on that night when the affair took place her mother and her two brothers, the bedroom being like this place; that when he placed the revolver on her breast he caught her hand and then put his hand on her throat and said, "Be quiet"; and when he put his hand on her throat he took the revolver from her breast and she doesn't know what Damián did with the revolver, but he continued to grasp her by the throat and spread open her legs, and while this was happening the defendant said to her, "Be quiet," and did not say he would kill her; that when the defendant told her to be quiet her mother and her brothers were in the same room without anyone hearing anything, everything happening in silence; that there were three beds in the room, one in which Damián slept, another of her mother and her brothers, and another her own bed.

Part of this evidence was evidently brought out on cross-examination and the witness gave some more unimportant testimony, being either immaterial or a mere repetition, such as where her school was and what she did there.

Then Dr. Torres testified that he had examined Catalina Espinosa and found her hymen ruptured and that the membrane must have been broken recently, say two, three, or four days before the examination, because of the condition of the scars.

Thereupon the following appears in the statement of the case: José Luciano Levis (witness of *fiscal*), commissioner of the ward of Capitanejo, and who filled this position on August 25, 1909: By order of the court it is stated that this witness has only testified in regard to the fact that Catalina Espinosa filed a complaint with him on August 25, wherein she stated that she had been violated on August 23,

1909. Julio C. Acosta (government witness), officer in service at Juana Díaz, August 25, 1909: By order of the court, it is made known (*se hace constar*) that this witness has only testified that Catalina Espinosa complained to him on August 25 that she had been violated. The witness then, on being questioned by the defendant, gave testimony to the effect that while the witness was making the investigation the defendant ran away, and that the defendant intended to run away because he mounted a horse and was found at a provision store at Juana Díaz, but that he was not about when Catalina made the charge.

These two witnesses, when they were first examined, testified as to some of the things Catalina Espinosa said to them, namely, her step-father had violated her, and other details.

The defendant moved to strike out such testimony as being hearsay. Whereupon the court ordered the objectionable evidence stricken out and made the orders in regard to the testimony of the witnesses that we have heretofore set forth. The defendant objected to the action of the court, and made up a separate bill of exceptions to review the same.

The testimony as to what the prosecuting witness told the commissioner and the policemen of the specific acts of the defendant and naming him was clearly inadmissible. (*People* v. *Wilmot,* 139 Cal., 103.)

The question, however, is presented whether what the court substituted cured the error. The authorities seem to indicate that not only must the objectionable testimony be stricken out, but the jury must be told to disregard the same. (*Barth* v. *State,* 39 Tex. Crim. Rep., 381; 73 Am. St. Rep., 935; *People* v. *Prather,* 134 Cal. Rep., 349; American Digest Decennial, vol 6, p. 1169.) In most cases it may be necessary for the defendant to ask for a specific instruction in this regard, but here not only was there a failure to instruct the jury, but the court put a statement on the record to which the witnesses had not been sworn. In this way there was no

proper confrontation; the witnesses were not subject to cross-examination; they would questionably be liable for perjury if the statements made for them by the court should turn out to be untrue.

The jury was left with whatever impression the improper testimony produced, and we feel constrained to hold that the whole action of the court constituted a fundamental error.

But there is another and possibly a graver aspect of the case. The law of 1909, Session Laws 1909, page 139, provides:

"An act to amend section 250 of the Code of Criminal Procedure. *Be it enacted by the Legislative Assembly of Porto Rico:*

"Section 1. Section 250 of the Code of Criminal Procedure is. hereby amended so as to read as follows:

" 'Section 250. Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, or for inveigling, enticing, or taking away an unmarried female of previous chaste character, under the age of twenty-five (25) years, for the purpose of prostitution or aiding or assisting therein, or upon a trial for seduction under promise of marriage, or for rape, the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless her testimony is corroborated by other evidence.'

"Section 2. Any law or part of law in conflict herewith is hereby repealed.

"Section 3. This act shall take effect on and after its passage." Approved March 11, 1909.

Was the prosecuting witness corroborated in any essential part of her testimony? Was there anything in the record beyond her statement or her complaint which tended to connect the defendant with the crime? Her complaint, even if properly presented, merely tends to negative the idea that the access to her body was committed with her consent. There was no attempt made to prove independently that the defendant was her step-father or that he owned a pistol. There was no attempt made to show the nature of the dwelling house where the crime was alleged to have been com-

mitted or of the possibility of performance in silence of the acts of which the prosecutrix complains. There was no independent evidence of her age or her manner of life, or her possible or probable freedom from the access of other men. The mere fact that the witness has been violated, if she was violated, does not tend to show that the defendant was guilty, and the testimony of the doctor merely tends to show that someone had venal access to her. The proof of an alleged flight by the defendant is too vague, remote, and unconnected to have any tendency to prove guilt. The law requires corroborating testimony. It is not necessary, however, that the corroborating testimony in itself must make out all the essentials of the crime charged. Yet it must in itself tend to connect the defendant with the crime. The courts of the United States had a tendency to require corroboration even before the enactment of a statute, as may be seen by a glance at the note in 6 American & English Ann. cases, 774. Several States, however, have statutes similar to our own, and in these States the amount of proof required for a corroboration of the prosecutrix is invariably greater than was given in the case at bar. Section 283 of the New York Penal Code provides: "No conviction can be had for abduction, compulsory marriage, rape, or defilement upon the testimony of the female abducted, compelled, or defiled, unsupported by other evidence." The statute does not specify the amount of corroboration or the nature or the character of the evidence to any greater extent than does our own. In the case of *People* v. *Terwilliger*, 74 Hun., page 310, the rule is laid down that the support or corroboration required should be the same as is held to be necessary for the corroboration of an accomplice, namely, corroboration by some other evidence tending to connect the defendant with the commission of the crime. Other cases to the same effect are: *People* v. *Haischer*, 81 Appellate Div. Rep., 561; *State* v. *Chapman*, 88 Iowa, 254, 56 N. W. Rep., 489; *State*

v. *Stowell,* 60 Iowa, 538, 15 N. W. Rep., 417.  (See especially Note L. R. A. [N. S.], vol. 26, p. 1149.)

For the errors we· have noticed, the judgment must be reversed and the case sent back for a new trial.

*Reversed.*

Justices MacLeary and del Toro concurred.

Mr. Chief Justice Hernández did not sit at the hearing of this case.